Melinda S. McCorkle #6-3905
KLINE, MCCORKLE, & PILGER, LLP
P.O. Box 1938
Cheyenne, WY 82003-1938
Tel: (307) 778-7056
Melinda@kmplaw.net
*Attorney for Plaintiff*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 JUN -6 PM 4: 03

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Russ Forney,<br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Wyoming Pizza, Inc.; Ruth Moran; and Frank Moran,<br><br>Defendants. | Civil Action No.  18-cv-87-F |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Russ Forney, on behalf of himself and all similarly-situated individuals, brings this action against Wyoming Pizza, Inc.; Ruth Moran; and Frank Moran. Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendant's willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and W.S. § 27-4-201, *et seq.*

2.      Defendants operate at least 6 pizza restaurants in Colorado and Wyoming.

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and the W.S. § 27-4-201, *et seq.* by failing to adequately reimburse delivery drivers for their delivery-

related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.      Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in Wyoming, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of W.S. § 27-4-201, *et seq.*

## I.     Jurisdiction and Venue

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Wyoming law claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in Wyoming and all or a substantial part of the events giving rise to the claim herein occurred in Wyoming.

## II.    Parties

**Plaintiff**

10.     Plaintiff Russ Forney resides in Casper, Wyoming. Further, at all times material herein, Plaintiff worked within the boundaries of the State of Wyoming.

2

Case 2:18-cv-00087-NDF   Document 1   Filed 06/06/18   Page 3 of 21

11.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and W.S. §27-4-201(a)(iv) .

12.     Plaintiff has given written consent to join this action.

**Defendants**

**Wyoming Pizza, Inc.**

13.     Defendant Wyoming Pizza, Inc. is a corporation with its principal place of business in Casper, Wyoming.

14.     Defendants Ruth and Frank Moran have been the owners and operators of Wyoming Pizza, Inc. since 1984.

15.     Wyoming Pizza, Inc. is the corporate entity that appears on Plaintiff's paystubs for work he completed for Defendants.

16.     Wyoming Pizza, Inc. owns and operates approximately 6 Domino's restaurants in Colorado and Wyoming.

17.     Wyoming Pizza, Inc. operates out of its headquarters at 105 S. Lincoln Ave., Casper, Wyoming 82601.

18.     Wyoming Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.     Upon information and belief, Wyoming Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

20.     Wyoming Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

3

21.     At all relevant times, Wyoming Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

22.     Wyoming Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and W.S. §27-4-201(a)(iv).

23.     At all relevant times, Wyoming Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

24.     Wyoming Pizza Inc.'s gross revenue exceeds $500,000 per year.

**Frank Moran**

25.     Defendant Frank Moran is the owner and operator of Defendant Wyoming Pizza, Inc.

26.     Mr. Moran is the president of Wyoming Pizza, Inc.

27.     Mr. Moran is individually liable to Wyoming Pizza, Inc.'s delivery drivers under the definitions of "employer" set forth in the FLSA and W.S. § 27-4-201, *et seq.* because he owns and operates Wyoming Pizza Inc.'s stores, serves as a manager of Wyoming Pizza, Inc., ultimately controls significant aspects of Wyoming Pizza Inc.'s day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

28.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had financial control over the operations at each of the Wyoming Pizza, Inc. stores.

29.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has a role in significant aspects of Wyoming Pizza, Inc.'s day to day operations.

30.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had control over Wyoming Pizza, Inc.'s pay policies.

31.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had power over personnel and payroll decisions at the Wyoming Pizza, Inc. stores, including but not limited to influence of delivery driver pay.

32.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had the power to hire, fire and discipline employees, including delivery drivers at Wyoming Pizza, Inc.'s stores.

33.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had the power to stop any illegal pay practices that harmed delivery drivers at Wyoming Pizza, Inc.'s stores.

34.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had the power to transfer the assets and liabilities of Wyoming Pizza, Inc.

35.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had the power to declare bankruptcy on behalf of Wyoming Pizza, Inc.

36.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had the power to enter into contracts on behalf of each of Wyoming Pizza, Inc.'s stores.

37.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran has had the power to close, shut down, and/or sell each of Wyoming Pizza, Inc.'s stores.

38.     At all relevant times, by virtue of his role as president of Wyoming Pizza, Inc., Mr. Moran had authority over the overall direction of each of Wyoming Pizza, Inc.'s stores and was ultimately responsible for their operations.

39.     The Wyoming Pizza, Inc. stores function for Mr. Moran's profit.

40.     Mr. Moran has influence over how the Wyoming Pizza, Inc.'s stores can run more profitably and efficiently.

**Ruth Moran**

41.     Defendant Ruth Moran is an owner and operator of Wyoming Pizza, Inc.

42.     Mrs. Moran is the secretary of Wyoming Pizza, Inc.

43.     Mrs. Moran is the treasurer of Wyoming Pizza, Inc.

44.     Mrs. Moran is individually liable to Wyoming Pizza, Inc.'s delivery drivers under the definitions of "employer" set forth in the FLSA and W.S. §27-4-201, *et seq.* because she owns and operates Wyoming Pizza, Inc.'s stores, serves as a manager of Wyoming Pizza, Inc., ultimately controls significant aspects of Wyoming Pizza Inc.'s day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

45.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had financial control over the operations at each of the Wyoming Pizza, Inc. stores.

46.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has a role in significant aspects of Wyoming Pizza, Inc.'s day to day operations.

47.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had control over Wyoming Pizza, Inc.'s pay policies.

6

48.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had power over personnel and payroll decisions at the Wyoming Pizza, Inc. stores, including but not limited to influence of delivery driver pay.

49.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had the power to hire, fire and discipline employees, including delivery drivers at Wyoming Pizza, Inc.'s stores.

50.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had the power to stop any illegal pay practices that harmed delivery drivers at Wyoming Pizza, Inc.'s stores.

51.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had the power to transfer the assets and liabilities of Wyoming Pizza, Inc.

52.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had the power to declare bankruptcy on behalf of Wyoming Pizza, Inc.

53.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had the power to enter into contracts on behalf of each of Wyoming Pizza, Inc.'s stores.

54.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran has had the power to close, shut down, and/or sell each of Wyoming Pizza, Inc.'s stores.

55.     At all relevant times, by virtue of her role as owner and operator of Wyoming Pizza, Inc., Mrs. Moran had authority over the overall direction of each of Wyoming Pizza's stores and was ultimately responsible for their operations.

56.     The Wyoming Pizza, Inc. stores function for Mrs. Moran's profit.

57.     Mrs. Moran has influence over how the Wyoming Pizza, Inc.'s stores can run more profitably and efficiently.

## II.     Facts

**Class-wide Factual Allegations**

58.     During all relevant times, Defendants operate at least 6 Domino's Pizza Stores (the "Wyoming Pizza" stores).

59.     The primary function of the Wyoming Pizza stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

60.     Some or all of the Wyoming Pizza stores employs delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

61.     Plaintiff Russ Forney and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Wyoming Pizza stores.

62.     All delivery drivers employed at the Wyoming Pizza stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

63.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Wyoming Pizza stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

64.     Plaintiff and similarly situated delivery drivers are required to spend approximately 25-50% of their time at work inside the store completing non-tipped duties.

65.     From the beginning of the relevant time period until June of 2016, Plaintiff and similarly situated employees were paid minimum wage minus a tip credit for all hours worked, including hours worked inside the restaurant in a non-tipped capacity.

66.     In June of 2016, Defendants began paying Plaintiff and similarly situated delivery drivers a "dual rate," i.e., the drivers were paid full minimum wage for the hours they worked inside the store, and minimum wage minus a tip credit for the hours worked completing deliveries.

67.     At all relevant times, Plaintiff and similarly situated delivery drivers have been an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

68.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

69.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, automobile financing, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

70.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

71.     One or more of the Wyoming Pizza stores do not reimburse delivery drivers for their actual expenses.

72.     One or more of the Wyoming Pizza stores do not reimburse delivery drivers at the IRS standard business mileage rate.

73.     One or more Wyoming Pizza stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

74.     At all relevant times, Plaintiff and other similarly situated delivery drivers at the Wyoming Pizza stores were reimbursed a per-mile reimbursement rate that was not adequate to cover their out of pocket expenses.

75.     Plaintiff and similarly situated delivery drivers typically average four to six miles per round-trip delivery.

76.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.   2015: 57.5 cents/mile
    b.   2016: 54 cents/mile
    c.   2017: 53.5 cents/mile
    d.   2018: 54.5 cents/mile

77.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Wyoming law.

78.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Wyoming Pizza stores.

79.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

80.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

81.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

82.     Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of Wyoming Pizza, Inc. stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

83.     Defendants have willfully failed to pay federal and Wyoming state minimum wage to Plaintiff and similarly situated delivery drivers at Wyoming Pizza stores.

### Plaintiff's Individual Factual Allegations

84.     Plaintiff has worked at Wyoming Pizza stores from approximately 1997 until present.

85.     Plaintiff has been paid minimum wage as an hourly rate.

86.     Currently, Plaintiff is paid full minimum wage for hours worked inside the restaurant, and $6.10 for the hours he works completing deliveries.

87.     From the beginning of the relevant time period until June 2016, Plaintiff was paid minimum wage minus a tip credit for all hours worked, including hours worked inside the store in a non-tipped capacity.

11

88.     Throughout his employment, Plaintiff has spent at least a quarter of his time at work completing work inside the restaurant.

89.     Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

90.     When he was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

91.     Plaintiff is reimbursed $.25 per mile for the miles he drives completing deliveries for Defendants.

92.     Plaintiff regularly drives approximately 4 to 6 miles per delivery on average.

93.     Plaintiff regularly delivers between 2 and 8 deliveries per hour.

94.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

95.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, automobile financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

96.     Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, and incur cell phone and data charges all for the primary benefit of Defendants.

97.     Defendants did not track the actual expenses incurred by Plaintiff.

98.     Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

99.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

100.    During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

101.    In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.295 ($.545 - $.25) per mile. Considering Plaintiff's estimate of about 5 average miles per delivery, Defendants under-reimbursed him about $1.48 per delivery ($.295 x 5 average miles).

102.    Thus, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $7.38 per hour ($1.48 per delivery x 5 deliveries per hour).

103.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

### Collective Action Allegations

104.    Plaintiff brings the First Count, *infra,* on behalf of himself and all similarly situated current and former delivery drivers employed at Wyoming Pizza stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

105.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

106.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

107.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

108.    Defendants are aware or should have been aware that employees are entitled to receive full minimum wage for hours worked in a non-tipped capacity.

109.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

110.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

111.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

112.    The FLSA Collective members are readily identifiable and ascertainable.

113.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

14

114.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

115.    Plaintiff brings Count II, *infra,* under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Wyoming Pizza stores in the State of Wyoming between the date eight years prior to the filing of this complaint and the date of final judgment in this matter ("Rule 23 Class").

116.    Excluded from Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

117.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

118.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

119.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

120.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

121.    There are more than 50 Rule 23 Class members.

122.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

123.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

124.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with W.S. § 27-4-201, *et seq.*

125.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

126.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

127.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

128.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

129.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

130.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

131.    Upon information and belief, Defendants and other employers throughout the state violate W.S. § 27-4-201, *et seq*. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

132.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

133.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

      a.  Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

      b.  Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

    c.   Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    d.   Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    e.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

    f.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    g.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

    h.   Whether Plaintiff and the Rule 23 Class worked dual jobs;

    i.   Whether Plaintiff and the Rule 23 Class spent more than 20% of their time at work in a non-tipped capacity from the beginning of the relevant time period until June 2016; and

    j.   The nature and extent of class-wide injury and the measure of damages for those injuries.

134.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**III.   Causes of Action**

<u>Count I</u>
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(Against All Defendants On Behalf of Plaintiff and the FLSA Collective)**

135.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

136.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

137.     Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

138.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

139.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

140.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

141.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count II**
**Failure to Pay Minimum Wage – W.S. §27-4-201, *et seq*.**
**(Against All Defendants On Behalf of Plaintiff and Rule 23 Class)**

142.     Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

143.     Defendants paid Plaintiffs and Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

144.     W.S. §27-4-202 requires that employers be paid not less than minimum wage for all hours worked.

145.   W.S. § 27-4-507 requires that employees be paid the wage the employer agreed to pay them.

146.   Because Defendants required Plaintiffs and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiffs and Rule 23 Class minimum wage.

147.   By not paying Plaintiffs and Rule 23 Class at least minimum wage for each hour worked, Defendants have violated W.S. §27-4-202.

148.   As a result of Defendants' violations, Plaintiffs and Rule 23 Class are entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, costs, and attorney fees pursuant to W.S. § 27-4-204.

**WHEREFORE**, Plaintiff Russ Forney prays for all of the following relief:

A.   Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.   Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.   Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.   Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.   A declaratory judgment that the practices complained of herein are unlawful under W.S. § 27-4-201, *et seq.*

F.      An award of damages under W.S. § 27-4-204, based on Defendants' failure to pay minimum wages, in the amount of unpaid wages, attorneys' fees, and costs.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.


**DATED** this 6th day of June, 2018.



                                        Respectfully submitted,

                                        _____
                                        Melinda S. McCorkle
                                        Kline, McCorkle & Pilger, LLP
                                        P.O. Box 1938
                                        Cheyenne, WY 82003-1938
                                        307-778-7056 (Phone)
                                        307-635-8106 (Fax)
                                        melinda@kmplaw.net

                                        *Counsel for Plaintiff and the putative class*


                                **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

                                        _____
                                        Melinda McCorkle