In the United States District Court
for the District of Wyoming

| | |
|---|---|
| Russ Forney,<br><br>*On Behalf Of Himself And Those Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>Wyoming Pizza, Inc., *et al.*,<br><br>Defendants. | Case No. 2:18-cv-87 (NDF) |

Memorandum in Support of Plaintiff's Unopposed Motion for Settlement Approval and for an Award of Attorneys' Fees and Costs

1. **Introduction**

    Plaintiff, a pizza delivery driver for Defendants' Domino's franchise operation, seeks approval of a settlement he has negotiated on behalf of himself and 21 opt-in Plaintiffs who joined this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). Plaintiff now asks the Court to approve the settlement, and approve his application for attorneys' fees and costs. Plaintiff further asks this Court to terminate this action, but to retain jurisdiction to enforce the terms of the Settlement Agreement reached between the Parties.

2. **Background of the Lawsuit**

    Plaintiff Russ Forney delivers pizzas for Wyoming Pizza, Inc. ("Wyoming Pizza") a Domino's brand restaurant. He brought this case on behalf of himself and similarly situated drivers to recover unpaid wages under the FLSA and Wyoming law.

1

Pursuant to the parties' stipulation and this Court's Order, notice was sent to all putative opt-in Plaintiffs pursuant to 29 U.S.C. 216(b), giving them an opportunity to join the case. Doc. 16. Notice was sent to 138 delivery drivers, and 21 drivers returned their consent to join forms to become part of the case.

The primary claim in this lawsuit is that Defendants allegedly paid the delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. Doc. 1 at ¶¶ 67-70. Plaintiff alleges that the reimbursement payments made by Defendants to drivers were not sufficient to cover their expenses, causing the drivers' wages to drop below minimum wage. In this case, the drivers were reimbursed at an average rate of either $.32 per mile (Defendants' calculation) or $.30 (Plaintiffs' calculation). It is Plaintiff's position that the Department of Labor addressed this situation by giving employers two options:

> **Car expenses: employee's use of personal car on employer's business**
>
> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drives employed by pizza or other carry-out type restaurants.
>
> As an enforcement policy, the IRS standard business mileage rate found an IRS Publication 917, "Business Use of a Car") may be used in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rate basis.

DOL Field Operations Handbook § 30c15. In other words, employers must either track and reimburse actual expenses or reimburse the IRS rate.

Defendants, on the other hand, claim that they are not required to reimburse at the IRS rate or reimburse actual expenses, but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles, have adequately reimbursed the delivery drivers for all of their expenses, and have at all times paid them properly. *See, e.g., Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015) (citing 29 C.F.R. §778.217).

Second, Plaintiff asserted that prior to June 2016, Defendants paid him and other delivery drivers a tipped wage rate for hours worked in a non-tipped capacity. Plaintiff contended that this alleged practice violated the FLSA's policy prohibiting payment of a tipped wage rate for an employee working "dual jobs"—one that generates tips, and other does not. When the employee works in "dual jobs," the employer is only permitted to claim the tip credit for the hours the employee actually works in a "tipped capacity." *See* 29 C.F.R. § 531.56(e). Only if the non-tipped duties are sufficiently "related" to the tipped work can they be paid at the tipped wage rate. *Id.*; *see also Schaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 554 (7th Cir. 2016) (considering whether plaintiff-servers worked dual jobs claim even though plaintiffs only claimed to do side work for 2-10% of their worktime). As a result, Plaintiff asserted that Defendants improperly underpaid him and other delivery drivers by paying him tipped minimum wage rather than full minimum wage for hours worked inside the store, not delivering pizzas and other food items.

Third, Plaintiff also brought a related claim under Wyoming wage and hour law. This claim is also being released only by Plaintiff and the Opt-in Plaintiffs.

### 3. Summary of Settlement Terms

The settlement only resolves the claims of delivery drivers who opted in to the case prior to June 1, 2019. A summary of the collective action notice process is below:

|  | **Numbers** | **Percent of Total Class** |
|---|---|---|
| **Total Putative Class Members** | 138 | 100% |
| **Opt-ins** | 22 | 15.9% |
| **Non-responding** | 116 | 84.1% |

The Settlement Agreement creates a collective class settlement fund of $91,643.35. *See* Ex. 1, Settlement Agreement and Release. The settlement fund was calculated as follows: for the reimbursement claim, the settlement was calculated based on a compromise rate of $.45 per mile. Before deductions for attorneys' fees, costs, and Plaintiff's service award, the drivers who completed consent to join forms will receive $.45 per mile, minus whatever they actually received during their employment, times two for liquidated damages. The total for the reimbursement claim is $65,163.96. For the "dual jobs" claim, the drivers will receive the difference between the wage rate they were paid--$6.00 per hour—and full minimum wage for all hours worked inside the restaurant, times two for liquidated damages. This totals $5,450.34. Finally, the settlement was negotiated based on a figure of $21,029.05 in attorneys' fees and costs. Ex. 1.

The settlement agreement contemplates that Plaintiffs' counsel will seek, and Defendants will not oppose, an attorneys' fee award of 1/3 of the settlement fund, reimbursement of advanced costs, and a service award of $5,000 to Plaintiff.

If Plaintiff's counsel's attorneys' fees and costs are approved, and if Plaintiff's service award is approved, the opt-in Plaintiffs will receive an average of $2,494.19. This amounts to 155% of the drivers' alleged unpaid wages, as calculated under the settlement, *after* all fees and costs are deducted.

4. **The Standard for Settlement Approval**

When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a

determination whether the settlement is fair and reasonable. *See, e.g., Hoffman v. Poulsen Pizza LLC*, No. 15-cv-2640, 2017 WL 25386, *2 (D. Kan. Jan. 3, 2017) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir.1982)). To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. *See Lynn's Food Stores,* 679 at 1354. "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, *2 (citations omitted). "To approve an FLSA settlement, the court must determine whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorney's fees." *Id*. at *4.

### 4.1. A bona fide dispute exists between the parties.

First, the Court must determine if there is a bona fide dispute between the parties about the claims being settled. *Hoffman*, 2017 WL 25386, *4. The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6 (S.D. Ohio May 30, 2012). In this case, Plaintiff's success on the under-reimbursement claim was not certain. Both parties could present arguments that the proper reimbursement rate was higher or lower than the compromise rate used in the settlement. Some of those arguments are purely legal in nature (*i.e.*, whether the IRS reimbursement rate applies), but some could require expert testimony to a jury. As it is, the settlement awards employees 1.55× their unpaid wages, as calculated under the settlement, after deducting for fees, costs, and service awards.

Success was not certain with respect to the "dual jobs" claim. Defendants could present arguments—again, both legal and factual—that the drivers' inside hours were "related" to their outside hours, and therefore the tipped wage rate was appropriate, and that the drivers each spent differing amounts of time inside and out, so their claims were different.

Based on these uncertainties, a bona fide dispute exists between the parties. *See, e.g., Hoffman*, 2017 WL 25386, *4 (holding that a bona fide dispute existed in a similar pizza delivery under-reimbursement case).

### 4.2. The settlement is fair and equitable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). To determine if the proposed settlement is fair and equitable, courts regularly examine the factors that apply to proposed class action settlements under Rule 23(e). *Hoffman*, 2017 WL 25386, *4 (citing *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). Those factors include: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Barbosa*, 2014 WL 5099423, at *7.

***The settlement was fairly and honestly negotiated.*** The settlement was negotiated by experienced counsel through arms-length negotiations. After the parties stipulated to send notice to putative opt-in plaintiffs and delivery drivers returned consent forms, Defendants provided

Plaintiffs' counsel with summary data relating to the drivers miles driven, reimbursements paid, and hours worked inside the store. Plaintiffs had questions about the validity of the data, and therefore asked Defendants for all of the delivery addresses so Plaintiffs' counsel to use Google Maps to calculate the miles driven themselves. The parties at first disagreed about whether this exchange was necessary, but Defendants ultimately provided the information. *See* Docs. 31, 32, 34, 35. Plaintiffs evaluated a statistically significant sample of the delivery addresses, and their analysis showed a slightly smaller per-mile reimbursement rate ($.32 v. $.30). Ultimately, the parties agreed to use Defendants' rate, based on Defendants' representations that, due to faulty addresses, a number of the routes charted by Google Maps actually went to the wrong place (sometimes, places far away from the store or even outside of the state of Wyoming).

The compromise reimbursement rate used by the parties' reflects the uncertainty as to the proper reimbursement rate for determining minimum wage compliance in the delivery driver context. As explained above, Plaintiff believes Defendants must reimburse at either the IRS standard business mileage rate, or keep track of and reimburse for the drivers' actual expenses. Defendants believe they are permitted to reimburse drivers based on a "reasonable approximation" of their expenses, which they claim they have done. *See, e.g., Perrin v. Papa John's*, No. 4:09-cv-1335, 2013 WL 6885334, at *7 (E.D. Mo. Dec. 31, 2013). Based on these factors, Plaintiff believes the $.45 rate is a reasonable compromise. Especially in light of the fact that the settlement also accounts for liquidated damages in the amount of unpaid wages, Plaintiff believes this is a quality result.

On the dual jobs claim, Defendants could have presented arguments that this claim applies differently to each driver based on their specific circumstances of employment. They could have

also argued that the job duties completed by drivers inside the store were sufficiently "related" to their outside duties, thus were properly payable at a tipped wage rate. Given the small amount of unpaid wages due on this claim ($2,725.17), the parties agreed that in the interest of resolving this claim, this amount would be paid in full, with liquidated damages.

The settlement also allocated over $19,000 for attorneys' fees, based on a lodestar calculation at the time it was negotiated, and over $1,200 in costs. As a result, the opt-in Plaintiffs will see only a small reduction in their total award amount to cover attorneys' fees and costs.

***Serious questions of law and fact exist such that the outcome was in doubt***. The final outcome of this case, particularly relating to Plaintiff's under-reimbursement claim, would possibly require competing experts and a jury determination. No circuit court has yet ruled on the proper reimbursement rate for delivery drivers in the minimum wage context. A number of courts have held that the IRS standard business mileage rate applies, while a number of other courts have held that the parties are free to "reasonably approximate" their drivers' expenses. *Compare Brandenburg*, 2018 WL 58900594, at *4, *with Perrin*, 2013 WL 6885334, at *7. If the case went forward, Plaintiffs would have moved for summary judgment that the IRS standard business mileage rate applies. If that motion was denied, the parties would retain experts to opine on what constitutes a "reasonable approximation" of the drivers' expenses.

The dual jobs claim is also in doubt. The Department of Labor recently issued an Opinion Letter ostensibly limiting the application of this regulation in certain contexts. In any event, it is being paid in full in the settlement.

***The value of an immediate recovery outweighs the mere possibility of future relief***. If this case were to proceed forward, the delivery drivers could have possibly received nothing. They also

8

faced the prospect of having to retain an expert and present their claims at trial to a jury. As it stands, the drivers will receive 155% of their alleged unpaid wages, as calculated under the settlement, *after* all deductions are taken for fees, costs, and service awards. If the drivers' successfully argued that the IRS standard business mileage rate was the proper standard, their unpaid wages would have been over $50,000. As such, even under that scenario, this settlement awards the drivers *more* than their alleged unpaid wages.

***The judgment of the parties***. The parties and their counsel believe, based on all of the above, that the settlement is fair and reasonable under the circumstances. The opt-in Plaintiffs have been informed of the terms of the proposed settlement. Plaintiffs' counsel has not received any objections regarding the settlement.

### 5. The payment of attorneys' fees and costs is reasonable.

Under the parties' Settlement Agreement and the FLSA, Plaintiff is entitled to an attorneys' fee award and reimbursement of costs.

The Settlement Agreement therefore allocates $30,547.78 for attorneys' fees, which amounts to 33% of the settlement fund. The Settlement Agreement also allocates reimbursement to Plaintiffs' counsel of $1,288.48 in advanced costs. Exhibit 2, Declaration of Andrew Kimble, ¶ 12. Plaintiff's attorneys' fees and costs are fair and reasonable, and should be approved.

#### 5.1. The Court should use the "percentage of the fund" approach to calculate a reasonable fee.

Courts in the Tenth Circuit use the percentage of the fund. "Our court typically applies the percentage of the fund method when awarding fees in common fund, FLSA collective actions." *Hoffman*, 2017 WL 25386, *8 (quotations omitted). "A percentage fee from a common fund award must be reasonable and the district court must articulate specific reasons for fee awards

9

demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award." *Id.* at *6 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)).

To determine the fee award's reasonableness, "the Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.* This method calls for a court to calculate a lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Id.* (citing *Solis*, 2014 WL 4357486, at *4; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))  The hybrid approach also requires consideration of the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Those factors are: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hoffman*, 2017 WL 25386, *6.

***The time and labor required (1)***. Plaintiff's counsel have completed considerable work to bring this case to settlement. First, they conducted an initial assessment of Plaintiff's claims and the claims of his co-workers. They researched Defendants' operations and ownership. They analyzed Wyoming wage and hour law (which is not heavily litigated) to determine whether the drivers also had a claim arising under state law. They researched and retained competent local

counsel, Melinda McCorkle, and familiarized themselves with the local rules and customs of this Court. Obviously, they drafted and filed the complaint and all other initiating documents.

After the case was filed, Plaintiff's counsel was in the process of drafting their Motion for FLSA Collective Action certification when the parties began discussing the possibility of a stipulated collective action notice. Plaintiff's counsel then negotiated the terms of the stipulation and the content of the collective action notice with Defendants' counsel. Plaintiff's counsel then sent notice to putative opt-in class members. During the opt-in period, Plaintiff's counsel fielded a number of calls from opt-in Plaintiffs about the case, the claims, and their options to join.

After the opt-in period closed, Plaintiff's counsel received summary data from Defendants relating to the drivers' claims. Plaintiff's counsel analyzed the data, and were not convinced that it was completely accurate. Plaintiff's counsel then attempted to negotiate with Defendants' counsel to provide additional information to verify the summary data. After Defendants refused to provide the additional information, Plaintiff's counsel was prepared to proceed to discovery so they could get the information they believed was necessary to properly evaluate the drivers' claims. *See* Docs. 31, 32, 34, 35 (briefing on whether stay should continue, discovery should commence, or Defendants should be required to provide additional discovery).

After Defendants provided additional information, Plaintiff's counsel evaluated the information they received. From there, the parties negotiated the settlement that is currently before the Court.

In total, Plaintiff's counsel have expended 108.90 hours on this case so far, which amounts to a total lodestar of $29,151.78. *See* Kimble Decl. As such, under the settlement, Plaintiff's counsel will receive roughly their lodestar.

In addition to the hours Plaintiff's counsel have put in to the case up to this point, they are likely to put in more hours during the administration of the settlement, ensuring the proper calculation of payment, ensuring the proper delivery of checks, and answering questions from opt-in Plaintiffs about the settlement.

Finally, Plaintiff's counsel has spent thousands of hours on similar "pizza delivery driver" FLSA cases all around the country, and that time and experience informed their actions to the substantial benefit of the delivery drivers in this case. *See, e.g., Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, *5 (S.D. Ohio Jan. 18, 2019) (referring to Plaintiff's counsel Biller & Kimble, LLC and stating, "In addition to the hours worked directly on this case, Plaintiff's counsel, having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here.").

***The novelty and difficulty of the questions presented in the case (2)***. The primary question presented in the case is not particularly novel, since Defendants' reimbursement policy is being challenged in similar suits around the country. *See, e.g., Clark v. Pizza Baker Inc., et al.*, No. 2:18-cv-157 (S.D. Ohio) (seeking to conditionally certify FLSA collective of all Domino's delivery drivers around the country for under-reimbursement claim). However, the reimbursement question is quite difficult. There is uncertainty surrounding the proper method of calculating minimum wage in the delivery driver context, and no circuit court has yet offered their opinion on the issue. Prosecuting this case on behalf of the drivers requires an understanding of various developments in caselaw in the FLSA and in this area in particular. It also has the potential of requiring expert testimony in at least two areas.

Plaintiff's counsel Biller & Kimble, LLC is experienced in delivery driver "under-reimbursement" claims, but they had to familiarize themselves with Wyoming wage and hour law, which is not heavily litigated, in order to bring the case.

***The skill requisite to perform the legal service properly (3) / Experience, reputation, and ability of attorneys (9).*** As stated above, Biller & Kimble, LLC is highly experienced in pizza delivery driver litigation. The Southern District of Ohio recently acknowledged that the firm has "established an expertise in 'pizza delivery driver' litigation." *Mullins*, 2019 WL 275711, *5. They have prosecuted or are prosecuting cases on behalf of delivery drivers in Wyoming, Colorado, Montana, California, Idaho, Nevada, North Dakota, Minnesota, Illinois, Wisconsin, Indiana, Michigan, Ohio, Kentucky, Tennessee, North Carolina, New York, New Jersey, Pennsylvania, Virginia, West Virginia, Florida, Louisiana, Mississippi, Arkansas, and Georgia.

Plaintiff's counsel Kline McCorkle are highly experience and accomplished employee advocates as well.

***Preclusion of other employment by the attorneys due to acceptance of the case (4) / Time Limitations imposed by client or circumstances (7) / Undesirability of the case (10)***. Plaintiff's counsel had to be prepared to litigate this case to the fullest extent possible, which required rejection of other work that could have resulted in a fee to ensure they were fully capable of serving Plaintiff and the opt-in Plaintiffs in this case.

Plaintiff did not place any time limitations on his counsel. The FLSA, however, has a statute of limitations that runs until each worker "opts in" to the lawsuit. Accordingly, Plaintiffs' counsel acted quickly to perform the necessary research and groundwork to bring the case, file it, and promptly agreed with Defendants' counsel to send notice to potential class members.

This case was not "undesirable." However, given that it is a relatively small damages case, it was a significant undertaking by Plaintiff's counsel to take on the case for these Wyoming-based delivery drivers. Moreover, the "pizza delivery driver" cases have a fairly steep learning curve and can be expensive to litigate; making them difficult for most firms to bring.

*Plaintiff's counsel's customary fee (5)*. As the District of Kansas explained in another pizza delivery driver case, "[f]ee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." *Hoffman*, 2017 WL 25386, *8 (quoting *Barbosa,* 2015 WL 4920292, *11).

The award requested here amounts to one-third of the common fund. "This percentage falls within the customary percentage of the fund approved by this Court and also within the customary fee range which counsel appears to charge in similar matters." *Id.*

*Whether the fee is fixed or contingent (6)*. The fee in this case was contingent. Plaintiff entered into a representation agreement with Plaintiffs' counsel, Biller & Kimble, LLC, that contemplates a 33% contingency fee. Kimble Decl., ¶ 8. The opt-in Plaintiffs have all authorized Plaintiff to "make all decisions on [their] behalf…including settlement, [and] the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and costs…" *See* Doc. 16-1, p. 8. These facts support an award of 33% of the fund.

*Amount involved and results obtained (8)*. By comparison to many "delivery driver cases," the amount involved in this case was small. At the parties' compromise numbers, the opt-in Plaintiffs suffered less than $50,000 in unpaid wages. However, for minimum wage workers, this is a significant amount of money. Still, considering the relatively small amount in question, Plaintiff's counsel took on significant risk to bring this case.

With respect to the results obtained, Plaintiffs will receive more than 155% of their unpaid wages *after* deducting for fees, costs, and incentive award. This is an excellent result.

***Nature and length of the professional relationship with the client (11)***. Plaintiff's counsel had no prior relationship with Plaintiff before representing him in this case.

***Awards in similar cases (12)***. As stated above, the requested fee award "falls within the customary percentage of the fund approved by this Court and also within the customary fee range which counsel appears to charge in similar matters." *Hoffman,* 2017 WL 25386, *8; *see also Barbosa*, 2015 WL 4920292, at *11 (concluding that a fee request that was 33% of the total settlement amount came within the range approved by our court and charged by counsel in other matters); *Bruner v. Sprint/United Management Co.*, Nos. 07-cv-2164, 08-cv-2133, 08-cv-2149, 2009 WL 2058762, *8 (D. Kan. July 14, 2019) (noting the same about a requested fee award that was 33% of the common fund).[1]

---

[1] *See also, e.g., Hatzey v. Divurgent, LLC.*, No. 2:18-CV-191, 2018 WL 5621967 (E.D. Va. Oct. 30, 2018) (approving a one third fee that was between 5.45 and 6.4 times the plaintiffs' counsels' lodestar); *Osman v. Grube, Inc.,* No. 3:16-cv-802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"); *In re Foundry Resins Antitrust Litig.,* No. 04-MDL-1638, Doc. 247 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 settlement); *In re Skelaxin Antitrust Litig.,* No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Moultry v. Cemex, Inc.,* No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel); *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002) ("[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund."); *Erie County Retirees Ass'n v. County of Erie,* 192 F. Supp. 2d 369, 382-83 (W.D. Pa.) (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-cv-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of… fee awards in comparable cases.); *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2:14-cv-4436, 2015 WL 1883537, at*3 (M.D. Fla. April 24, 2015) (awarding a fee award of 33% of the FLSA common fund); *Graves v. Estes Heating & Air Conditioning, Inc.,* Case No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case); *Jackson v. Healthport Technologies, LLC,* No. 1:11-cv-01687-SCJ, Dkt. 68 (N.D. Ga. 2013) (approving fees and costs to Class

**5.2. Plaintiff's Costs are reasonable and should be reimbursed.**

The FLSA provides for reimbursement of reasonable costs advanced for the purpose of litigation. 29 U.S.C. 216(b). Plaintiff's counsel have advanced $1,288.48 in reasonable costs associated with this case. The costs related primarily to:

- Filing fee, pro hac vice fees, and service of process
- Sending of notice of the FLSA collective action
- Data analysis relating to Plaintiff's damages calculations.

*See* Kimble Decl., ¶ 12.

**6. The incentive payment is reasonable.**

Plaintiff Russ Forney seeks an incentive award of $5,000. As the Supreme Court recently recognized, a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, --- U.S. ----, 138 S.Ct. 1800, 1811, n.7, 201 L.Ed.2d 123 (2018). It is "appropriate to reward wage and hour plaintiffs who obtain tangible benefits for their fellow workers." *Arledge*, 2018 WL 5023950, *6.

Here, Plaintiff Russ Forney researched and contacted a law firm on the other side of the country based on their skill and experience in handling the very claims he sought to assert. He then worked with his counsel to provide information throughout the case, including providing his own

---

Counsel in the amount of 33 1/3% of the common fund in FLSA case); *Morefield v. NoteWorld, LLC*, Nos. 1:10-cv-00117, 2012 WL 1355573 (S.D. Ga. 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-cv-691, 2011 WL 6846747, at *6 (M.D. Fla. 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees); *Hosier v. Mattress Firm, Inc.*, No. 3:10-cv-294, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Kemper v. Rent-A-Center, Inc.*, Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund to plaintiffs' counsel); *Stahl v. Mastec, Inc.*, No. 8:05-cv-1265, 2008 WL 2267469 at *2 (M.D. Fla. 2008) (approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453-MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees).

approximated mileage documentation when Plaintiff's counsel was attempting to cross-reference Defendants' data. He also worked carefully with his counsel to evaluate the settlement offer being presented to the drivers before agreeing to its terms. Without Mr. Forney's efforts, these 22 drivers would not be receiving the payouts they will soon receive under the Settlement Agreement. *See* Kimble Decl., ¶ 14. The requested service award is a reasonable award for an employee who obtained tangible benefits for his fellow workers. *See, e.g., Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (describing two $10,000 awards as "modest"); *Arledge*, 2018 WL 5023950, *6 (awarding $10,000 service award to class representative in a case against another Domino's franchise and raising nearly identical claims); *Mullins*, 2019 WL 275711, 6 (awarding $10,000 service award).

### 7. Conclusion

Plaintiff asks that the Court grant final approval to the parties' Settlement Agreement and dismiss the lawsuit with prejudice. Plaintiff also asks the Court to award reasonable attorneys' fees, costs, and an incentive award to Plaintiff Forney, as requested herein.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew P. Kimble (*pro hac vice*)
Biller & Kimble, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
www.billerkimble.com

Melinda S. McCorkle

17

Stephen H. Kline
Kline, McCorkle & Pilger, LLP
P.O. Box 1938
Cheyenne, WY 82003-1938
307-778-7056 (Phone)
307-635-8106 (Fax)
www.klinewyolaw.com

*Counsel for Plaintiff*

## Certificate of Service

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*s/Andrew Kimble*
Andrew Kimble
